## J. P. McKenzie and wife v. C. J. Harris.

(February 13, 1880.)

Draft — Liability of payee as indorser. — The liability which the payee of a draft, by writing his name on the back of the instrument and transferring it, incurs is that of indorser, and parol testimony is inadmissible to show that his liability is not that of an indorser, but of an original promisor or guarantor.

Same — Due diligence. — Parol evidence is inadmissible to prove that the indorser of a draft released the holder thereof from his obligation to use due diligence to collect it.

Same — Release of indorser. — The failure of the holder of a draft to use due diligence to collect it releases the indorser from liability to pay it.

Appeal from Ellis county. Opinion by Quinan, J.

Statement.— This suit was instituted on the 5th of August, 1873, by Harris against the president and treasurer of Marion College and McKenzie and wife, upon a draft drawn by F. P. Fry, president of the board of trustees of Marion College, on B. F. Hawkins, treasurer of the board, in favor of J. P. McKenzie, for $596, accepted on July 10, 1872, and who, on July 15, 1872, transferred it to J. L. Stroop. The petition alleges that at the same time McKenzie and wife executed a mortgage to secure the payment of the draft; that afterwards, on the 2d of August, 1873, Stroop transferred the order and mortgage and delivered them to petitioner. He prays judgment for the amount of the draft and a decree foreclosing the mortgage.

The draft is in these words:

$596 specie.  B. F. Hawkins, treasurer board of trustees Marion College: Pay J. W. McKenzie, president of Marion College, the sum of five hundred and ninety-six specie dollars, in full of the balance of his salary as president for the term ending June 14, 1872.  Waxahachie, July 10, 1872.

     (Signed)          F. P. Fry,
       President Board of Trustees, Marion College.
Accepted July 10, 1872.

     (Signed)            B. F. Hawkins,
                Treasurer Marion College.

Indorsed: Pay J. L. Stroop or order.

     (Signed)          J. W. P. McKenzie.

Received on the within, $34 coin.

     (Signed)          C. J. Harris.

The mortgage is in form a deed from McKenzie and wife to J. L. Stroop, with this condition: "That in case B. F. Hawkins shall pay or cause to be paid to the said J. L. Stroop five hundred and ninety-six dollars specie, which is evidenced by an order on said Hawkins by F. P. Fry in favor of J. W. P. McKenzie for said amount, dated July 10, 1872, and accepted same day by said Hawkins, this instrument is to be null and void, otherwise to remain in full force and effect." The date is July 15, 1872.

With the mortgage there is a transfer of it from Stroop to Harris on the 2d of August, 1873, and "the claim upon which it is founded."

By an amendment the members of the board of trustees of Marion College were made parties, who pleaded they were not liable personally, and thereafter the suit proceeded as against "Marion College."

On the 8th of May, 1874, defendant McKenzie demurred generally and excepted specially to the plaintiff's petition and amended petition, that plaintiff not having sued at the first term of the district court, nor at the second term with good cause shown for not suing at the first term after his cause of action arose, and the draft not having been pro-

tested, that by the gross laches of plaintiff he is released from his liability. He also repeated the general denial.

On the 25th of May, 1874, plaintiff, by an amended petition, set up that defendants (Marion College), through their authorized agent, B. F. Ray, contracted with Stroop to pay interest on said order from the date at two and one-half per cent. per month, for which he prays judgment. On the 11th of September, 1874, the court sustained the defendant McKenzie's demurrer. The demurrer of Marion College was overruled.

On the 12th of September, 1875, plaintiff amended, alleging in substance that about the 15th of July, 1872, McKenzie applied to Stroop for a loan of money to the amount of the draft, and offered him the draft upon which to raise the money; that Stroop refused to let him have it unless he would become personally responsible and secure the payment of the same by mortgage on real estate; that these terms were accepted by McKenzie, and in pursuance of the same he procured the money and made himself responsible by signing his name to the draft and executing with his wife the mortgage described in plaintiff's original petition.

He further alleges " that said McKenzie was party to the agreement, evidenced by the memorandas written on said draft with regard to the payment of interest, which said memoranda is here referred to and made part of this amendment, whereby he became liable for the payment of interest at the rate specified in said memoranda, and that this agreement to pay interest as aforesaid entered into and formed a part of the terms proposed by said Stroop and accepted by said McKenzie, and upon which agreement McKenzie received the sum of money aforesaid."

That after this agreement McKenzie, from time to time, requested that suit should not be instituted for the payment of said money and the foreclosure of said mortgage, and that, in pursuance of this, suit was delayed until the filing of plaintiff's petition; that immediately before the

institution of the suit McKenzie told Stroop the time had arrived for the institution of the suit, "and therefore plaintiff immediately sued, by reason of all which McKenzie became liable to pay plaintiff the sum of money in said draft mentioned, together with the interest at the rate in the memoranda before specified; that the mortgage was executed the better to secure the payment of the same," etc.

The defendant McKenzie demurred to this amended petition and his demurrer was overruled.

The cause came on for trial on the 9th of January, 1875, and was submitted to the judge. The plaintiff read in evidence the draft sued on, the memorandum and mortgage. The memorandum is in these words: This memorandum is intended to show that the undersigned, as president of the board of trustees of Marion College, agreed to pay J. L. Stroop two and one-half per cent. interest per month on the above claim against the college from the 1st day of September, 1872, until paid.

(Signed)                F. P. FRY,
President Board Trustees, Marion College.

Stroop testified that the money loaned to McKenzie was Harris' money, which he had given him to lend out at two and one-half per cent. interest per month, with security upon real property.

That about the 15th of July, 1872, McKenzie applied to him for the loan of the amount of money mentioned in the draft, and offered the draft to raise the money on; that Stroop refused to let him have it unless he became personally responsible and secure the payment of the same by mortgage on real estate; that these terms were accepted by McKenzie, who, in pursuance of the same, procured the money and made himself responsible by indorsing his name on the back of the draft and executing the mortgage described in the petition.

Stroop further stated that it was on the faith of the mortgage he let McKenzie have the money; that frequently after this transaction he asked McKenzie whether he should

sue; McKenzie told him not to sue until he told him, and he did sue as as soon as McKenzie told him.

He further stated that McKenzie paid interest on the money to 1st September, 1873, at two and one-half per cent. per month, and promised to pay that rate of interest from and after that date in case the draft should not be paid in full by the said board of trustees by or before that date; and that it was partly upon the faith of said promise to pay said interest that he let McKenzie have the money, and McKenzie repeatedly afterwards promised to pay said interest.

He further stated that the interest memorandum on the draft was not there when he got the draft from McKenzie, but that the same was made and attached to the draft afterwards in the absence of McKenzie, in accordance with an agreement with McKenzie to that effect.

To the testimony of Stroop, as it was offered, the defendants excepted, on the ground that the contract of McKenzie was that of an indorser, and that parol testimony was inadmissible to vary or alter its terms; that parol testimony is inadmissible to prove that McKenzie released the holder of the draft from his obligation to bring suit at the first term of the court after the cause of action accrued; that the testimony as to the agreement to pay interest varies the terms and the legal effect of the original contract, etc.; but the defendant's exceptions were overruled and the witness permitted to testify as stated.

The court rendered judgment against Marion College and J. P. McKenzie for $1,031.76, and that the judgment bear interest at that rate until paid, and costs, and decreed a foreclosure of the mortgage to pay the judgment,—execution first to be issued against Marion College. The defendant, McKenzie, has prosecuted this writ of error from the judgment and assigns for error: 1. Overruling his exceptions to petition of 12th of September, 1874. 2. Admitting parol evidence to prove that McKenzie released plaintiff from his obligation to sue. 4. In admitting parol evidence

that McKenzie verbally agreed to pay the interest in the memorandum. 5. That the judgment of the court is contrary to the evidence.

Opinion.— The liability which McKenzie, the payee of the draft sued on, by writing his name on the back of the instrument, incurred, was that of indorser. The contract of indorsement is as fully expressed by his signature as if it were written out in full above it. There is no ambiguity about it. He contracts to pay the draft himself if Hawkins, the treasurer of Marion College, does not pay it, and suit is instituted thereon at the first term of the court after the right of action against Hawkins accrues, or at the second term if good cause is shown why suit was not instituted before the first term after the right of action accrued, or if he will have the draft duly honored for payment. Daniels on Neg. Inst., 498; Story on Bills, 103.

" The receipt of a bill implies an undertaking on the part of the indorsee or other holder to every party on the bill who would be bound to pay it . . . to allow no extra time and grant no indulgence for payment, and to take all the proper steps and do all the proper acts required by law upon its dishonor to verify and establish the same. A default in any of these respects will discharge the party who would otherwise be bound to pay the same from all responsibility on account of its non-payment, and will operate as a satisfaction of any debt or demand for which it was given." Story on Bills, 135.

There was nothing, then, ambiguous in the character of McKenzie's undertaking, as expressed by his indorsement; and where there is no ambiguity to explain, parol testimony is not admissible to vary or to contradict the agreement. It is inadmissible for the purpose of qualifying or modifying the contract. Wharton on Evidence, 1058; Daniels on Neg. Inst., 533.

The court erred, therefore, in permitting Stroop to testify, so far as his testimony went to establish that McKenzie's

liability was not that of an indorser but of an original promisor or grantor.

We think, also, that the court erred in permitting parol testimony to show that McKenzie had requested Stroop not to sue upon the draft, and of his subsequent promise to pay it.

The statute of 20th January, 1840, "An act to dispense with the necessity of protesting negotiable instruments for dishonor, and of giving notice thereof, and to regulate assignments of all written instruments," by the first section provided "that it shall not be necessary for the owner, as holder of a bill of exchange, promissory note, check, or draft, or other mercantile negotiable instrument, to have any of these instruments protested for non-acceptance or non-payment, nor shall it be necessary to give notice of such dishonor to any drawer, indorser or assignor of the same, and every such party shall, without any protest or notice whatever, be held responsible or security for the final payment of every such instrument; provided, however, that in all cases in which either a protest or a notice was hitherto necessary, the party that would have been released from responsibility by a failure to make such protest, or to give such notice, shall hereafter be released from all responsibility unless the owner or holder of such instrument shall use due diligence to collect the same; and every holder or owner shall be adjudged not to have used due diligence who shall not have instituted suit against the drawer or maker of such instrument before the first term of the district court after the right of action accrued, or shall not institute such suit before the second term of said court, and also show good cause why he did not institute his suit before the first term."

The third section of this act applies to the assignment of bonds or other written instruments, and provides that "to hold the assignor as security for the payment of the instrument, the assignee shall use due diligence to collect the same."

Here, then, we have a legislative construction of what due diligence means. It is the institution of suit before the first term of the court after the right of action accrued, or at furthest before the second term, if good cause be shown why it was not instituted at the first term.

And although this first section of the act of 1840 was repealed in 1848, and a provision made by the act of 1848 permitting the liability of indorsees to be fixed as well by protest as by suit, in certain cases, yet it has been held that the term "due diligence" meant the same thing in both instances, viz., by suit or by protest.

Chief Justice Hemphill says, in Thompson v. Payne: "The statute changed the acts which would fix the liability of the drawer or indorser of negotiable instruments, and substituted suit, styling such suit diligence. We think it plain that the legislature intended to give the same meaning to the term due diligence in this connection that was applied to it in the first section of the act (of 1840), viz., the bringing suit at the first term, and if not at the first, at the second term after the accrual of the cause of action, with good cause shown." 21 Tex., 625.

By the seventh section of the act of 1840 (article 206, Paschal's Digest), it is provided "that parol testimony shall be inadmissible to prove that the assignor, drawer or indorser released the holder of any of the aforesaid instruments from his obligation to use due diligence to collect the same."

And this embraces every class of instruments negotiable or assignable by law. It would seem very clear, then, that the testimony of Stroop was inadmissible to prove that McKenzie had released Stroop from his obligation to sue at the first or second term of the court after the assignment of the draft to him, and consequently that, suit not having been brought, McKenzie's liability upon the draft ceased. He was no longer bound upon it, nor was it his debt; it remained the debt of Marion College only.

It is insisted, however, that, by McKenzie's promise to

pay after his liability had been discharged by the failure to sue the college and by his subsequent payment of interest, he is estopped from availing himself of that as a defense.

Without doubt these circumstances have been almost universally held in other states, where no such provision exists in regard to the admissibility of parol evidence of release, as admissible to excuse the want of diligence and to prove a waiver of the necessary diligence, or rather as an acknowledgment that the necessary steps had been taken to hold the indorser liable. Daniels on Neg. Inst., 2d vol., 167; Story on Notes, 274. And it is said that where he promises to pay the bill or note such promise imports an unconditional assumption of it and a dispensation with whatever preliminary evidence might be necessary to charge him with its payment. Daniels on Neg. Inst., 171.

But citations from the adjudications of other states, where no similar statute regulates the admissibility of evidence, are altogether inapplicable here. To permit the introduction of such proof by parol would violate the plain meaning of the statute (art. 206), and would be opposed to the policy of the law, which was doubtless designed to relieve the courts of the embarrassing questions and controversies which, without stint, would necessarily spring up in determining what acts or expressions would or would not amount to a waiver of diligence, and to provide a fixed rule upon that subject, adapted to our people, our times and our system of laws.

Again, if the liability of McKenzie was wholly discharged, as we think it was, and the debt remained as the debt of Marion College, his parol promise to pay it was a promise to pay the debt of another, and therefore invalid. If we look at the provision of the statute requiring diligence, and limiting the period within which suit may be brought, as a law of limitation, as was the view taken of it by the supreme court in Locke v. Huling, 24 Tex., 312, and that the debt as against McKenzie was wholly barred, then it could

not be revived except by a written acknowledgment. P. D., art. 4617a.

But it is urged that the mortgage made by McKenzie and wife bound him to pay the debt to Stroop, and is a continuing acknowledgment in writing of his liability on the draft. Now, the mortgage speaks for itself, and it seems to be carefully worded to convey the very opposite idea. It is certainly not a security for McKenzie's indorsement, but it binds the land only on the condition "that B. F. Hawkins shall pay or cause to be paid to the said J. L. Stroop $596, which is evidenced by an order on said Hawkins in favor of J. W. P. McKenzie for said amount, dated July 10, 1872, and accepted the same day by said Hawkins." The mortgage stands unaffected by McKenzie's release as indorser. It still remains effectual as security for the payment, by Hawkins, of the amount specified according to its terms.

That McKenzie is not liable upon the memorandum signed by Ray for the payment of interest at two and one-half per cent. per month scarcely needs serious discussion. It is not signed by him, he is in no sense party to it or liable upon it, it forms no part of his contract of indorsement; nor is the allegation of his connection with it so as to make him liable upon it (in itself wholly insufficient to charge him with any liability) supported by any proof whatever. It seems an obligation for the benefit of Stroop, made by Fry, possibly at the request of McKenzie, and had he designed it as obligatory upon himself he doubtless would have signed it; but it is executed in his absence, long after the transfer of the draft.

We do not doubt that if, for the loan of money from Stroop, McKenzie had, at the date of this transaction, undertaken to pay interest at two and one-half per cent. thereon, even by parol, such a contract could be enforced against him, but it cannot be tacked on to his obligation as indorser. It would constitute a separate and independent cause of action against him.

1. We conclude, therefore, that the court erred, for the reasons indicated, in overruling defendant's exceptions to the plaintiff's amended answer.

2. That the court erred in permitting the introduction of the parol testimony.

3. That it erred in the judgment rendered, and therefore this cause should be reversed.