FIRST NAT. BANK OF MIDLAND v. POWELL.

(Court of Civil Appeals of Texas. El Paso. June 6, 1912. Rehearing Denied Oct. 9, 1912.)

1. BILLS AND NOTES (§ 267*)—INDORSEMENT CONTRACT—EFFECT.

An indorsement contract is one entirely independent from the note, being not merely a transfer of the note but a new and substantial contract embodying in itself all the terms of the instrument indorsed.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 620, 629; Dec. Dig. § 267.*]

2. BILLS AND NOTES (§ 280*)—INDORSEMENT —OBLIGATION OF INDORSER.

By an indorsement of a note unless limited by express provision in the contract of indorsement, the indorser contracts that if the note is not paid by the maker the indorser will pay the same.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 622, 627; Dec. Dig. § 280.*]

3. EVIDENCE (§ 403*) — PAROL EVIDENCE — WRITTEN CONTRACT—INDORSEMENT.

The contract implied by the indorsement of a note cannot be varied or contradicted by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1807–1812; Dec. Dig. § 403.*]

4. EVIDENCE (§§ 432, 434*)—PAROL EVIDENCE —CONSTRUCTION—FRAUD.

The parol evidence rule does not include evidence offered to show want or failure of consideration for indorsement or to impeach its original or present validity for fraud.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1981–1989, 2005–2020; Dec. Dig. §§ 432, 434.*]

5. EVIDENCE (§ 419*)—PAROL EVIDENCE—INDORSEMENT.

Where defendant indorsed a note given for the purchase price of certain cattle and secured by a chattel mortgage thereon to plaintiff bank, he was not entitled to prove by parol that it was agreed as a part of the consideration for the transfer and indorsement of the note that the bank would look after and preserve the mortgaged property; such proof being an effort to ingraft on the contract of indorsement a condition imposing on the bank a duty not imposed by the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. § 419.*]

6. BILLS AND NOTES (§ 301*)—INDORSEMENT —CONTRACT OF INDORSER—NATURE.

The contract of an indorser of commercial property is similar to that of an ordinary surety so that what will release a surety will ordinarily release an indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

7. BILLS AND NOTES (§ 301*)—INDORSEMENT —RELEASE OF INDORSER — DISPOSITION OF SECURITY.

An indorser on a note secured by a chattel mortgage will be released from liability by the indorsee's loss of the security or permitting the property to be diverted from that purpose only where the indorsee's negligence consists of some affirmative act or a failure to perform some express or implied duty in regard to the mortgaged property resting on the holder of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

8. PRINCIPAL AND SURETY (§ 115*) — DISCHARGE OF SURETY—CREDITOR'S LOSS OF EFFECTS HELD AS SECURITY—NEGLIGENCE.

A creditor who has effects of the principal in his hands or under his control for the security of the debt is a trustee for all purposes concerned, and, if the effects are lost through the creditor's negligence, a surety on the debt will be discharged to the extent he has been injured the same as if the effects had been lost by the positive act of the creditor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 244–268; Dec. Dig. § 115.*]

9. BILLS AND NOTES (§ 301*)—INDORSEMENT —DISCHARGE OF INDORSER—LOSS OF SECURITIES.

The purchaser of certain cattle executed a note for the price to defendant, the seller, secured by a mortgage on the cattle, which note defendant indorsed and procured to be discounted by plaintiff bank. At the time of the transaction, it was understood by all parties that the cattle were to be removed to Oklahoma which was authorized by the mortgage. Held that, defendant having consented to such removal, defendant was not discharged thereby from his obligation as indorser nor by reason of the bank's passive negligence in failing to discover that the buyer was disposing of the cattle and failing to apply the proceeds to the payment of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

10. BILLS AND NOTES (§ 301*)—INDORSEMENT —DISCHARGE OF INDORSER.

Under Rev. St. 1895, art. 1204, providing that an indorser may be sued without the necessity of previously or at the same time suing the principal debtor when he is a nonresident of the state, an indorser would not be relieved from liability because of the creditor's failure to go beyond the state and subject property there to the payment of the debt by resorting to extraordinary remedies in advance of the maturity of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

11. PRINCIPAL AND SURETY (§ 115*)—GENERAL DEPOSIT—OBLIGATION TO INDEBTEDNESS —RIGHTS OF SURETY.

Failure of a bank to apply the funds of a depositor on deposit to the payment of a note held by it will not discharge the surety thereon.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 244–268; Dec. Dig. § 115.*]

12. BILLS AND NOTES (§ 301*)—ASSETS—OBLIGATION—LIABILITY OF CREDITOR.

Where a bank held a note on which defendant was an indorser secured by chattel mortgage, it was its duty to appropriate and apply to the payment of the note any of the proceeds of the mortgaged property which came into its hands, with knowledge either that the moneys were the proceeds of the mortgaged property or of circumstances sufficient to charge it with such knowledge, but it was not responsible for the application of any of the proceeds which may have indirectly come into its hands.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**13. BILLS AND NOTES (§ 301*)—LIABILITY OF INDORSER—INSTRUCTIONS.**

Since an indorser's liability is by virtue of his contract and is fixed by protest and suit within the time prescribed by statute and is not dependent on any other diligence to collect from the principal obligor, an instruction that if the holders by the exercise of reasonable diligence could have collected from the maker any sum of money on the indebtedness when it was due and failed to do so, then for that amount the indorser was entitled to an offset against his liability, was erroneous.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 706–721; Dec. Dig. § 301.*]

**14. APPEAL AND ERROR (§ 499*)—RULINGS ON EVIDENCE—BILL OF EXCEPTIONS.**

Where bills of exception to the sustaining of objections to testimony do not dispose of the objections urged to the testimony, but merely recited that objections were made and the testimony excluded, the rulings coul⋆ not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2299; Dec. Dig. § 499.*]

Error from District Court, Ector County; S. J. Isaacs, Judge.

Action by the First National Bank of Midland against L. P. Powell. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

A. S. Hawkins, of Phoenix, Ariz., J. M. Caldwell, of Midland, and F. M. Whitaker, of El Paso, for plaintiff in error. Goree & Turner, Cowan & Burney, and Theodore Mack, all of Ft. Worth, Frank A. Judkins, of Odessa, and Graham B. Smedley, of Midland, for defendant in error.

HIGGINS, J. Plaintiff in error filed suit in the district court of Midland county against defendant in error to recover upon a promissory note in the sum of $5,793 executed by A. A. Frields, payable to the order of defendant in error, payment of which was secured by a chattel mortgage upon the cattle described in the answer of defendant in error. Frields was not made a party to the suit; his insolvency and residency beyond the limits of the state being alleged as an excuse for not suing him. After two mistrials in Midland county, the venue was transferred to Ector county and there tried before a jury, resulting in a verdict for the defendant, upon which judgment was rendered and from which this writ of error is prosecuted.

Powell was the owner of 200 head of cattle situate in Midland county, Tex., which he desired to sell and which Frields desired to purchase. Not having the money to pay for same, Frields conferred with plaintiff in error, and it was agreed between all parties that Frields should give his note to Powell to cover the purchase price, secured by a chattel mortgage upon the cattle, and the bank was to cash the note for Powell, who was to transfer the note and mortgage to the bank. The bank was to prepare all of the necessary papers, and it was understood by all parties that the cattle were to be removed by Frields to Caddo county, Okl. The mortgage was in the ordinary form, executed by Frields to Powell upon "200 three year old steers branded 'W' on left hip; said cattle are to be shipped by the said Frields to Caddo county, Oklahoma." The following provisions were contained in the mortgage: "If default be made, in any of the conditions herein contained, or any part thereof, or, if any secreting or removal from their locality or any abuse or misuse, any sale, and seizure whatever by any process of law of said described personal property, or of any part of it, be either made or attempted by said mortgagor, or by any person or persons claiming under him or in behalf of either or by or in behalf of any creditor or creditors of said mortgagor, or if from any cause the security shall become inadequate, or the mortgagor shall at any time during this mortgage become apprehensive to the ability of the mortgagor to perform any of the conditions, covenants or agreements herein contained, then, and in such case the said mortgagee L. P. Powell and successors are hereby fully authorized and empowered to take immediate possession of the property hereinbefore described, and sell the same at public auction, for cash, at the door of the court house, in Caddo county, Oklahoma, by giving the notice of the time and place of sale, as is now required by the statutes of the state of Oklahoma, in sales of personal property under execution." After their removal to Oklahoma the cattle were sold by Frields and the proceeds appropriated by him. The note was transferred to the bank by Powell by ordinary indorsement in blank and the amount of the note paid to Powell.

The pleadings of the defendant are very voluminous, and his defenses, concisely stated, are: First, that as a consideration for the transfer and indorsement of the note there was a collateral parol agreement upon the part of the bank to look after the mortgaged property and see that the proceeds thereof were applied to the payment of the note; that they had failed to keep this agreement, by reason of which the proceeds had been appropriated and dissipated by Frields, wherefore the consideration for the indorsement had failed. Second, that the transfer of the note having carried with it the mortgage lien, it became the duty of the bank to exercise ordinary care and diligence to prevent the loss or dissipation of the security, and by reason of its failure to exercise the same the mortgaged property was lost and dissipated. Third, that a part of the proceeds of the cattle had been deposited by Frields with the bank, which the bank should have applied upon the note, but that it had failed to do so and had per-

mitted Frields to withdraw and appropriate same, whereby he was released from his liability as an indorser to the extent of the money so deposited with the bank and permitted to be withdrawn. Fourth, that by the exercise of ordinary diligence the bank could have collected the note from Frields when the same became due, and by reason of its failure so to do he was released. Fifth, that after the maturity of the note Frields had certain moneys on deposit with the bank; that it should have appropriated and credited same upon the note, but permitted same to be withdrawn, thereby releasing Powell pro tanto from his contract of indorsement.

Those portions of the court's charge material to a consideration of this appeal read as follows:

"(2) If you find and believe from the evidence that the plaintiff, at the time that it negotiated for and purchased from the defendant the note sued upon, contracted and agreed with the defendant, as a consideration for defendant's indorsing said note, to look after and preserve the property described in said mortgage, in order that said property, or its value, or proceeds, should be applied to the payment of the note sued upon; and if you further find and believe from the evidence that the plaintiff, or its officers acting for it, failed and refused to exercise reasonable care to preserve said security, and that by reason of such failure, if any, said security, that is, or their proceeds, was dissipated, lost, or appropriated to other purposes than the payment of the note herein sued upon—then you will find for the defendant.

"(3) If you fail to find that there was a contract, as alleged by the defendant, between him and plaintiff, whereby plaintiff agreed to look after and preserve the property covered by the mortgage, then you are instructed that, when the defendant transferred to the plaintiff the note sued upon, such transfer or assignment of said note carried with it the mortgage, as appurtenant thereto, and it became the duty of the plaintiff to exercise ordinary diligence and care to prevent the loss or dissipation of said mortgaged property, to the end that same, or the proceeds thereof, if permitted to be sold, should be applied to the payment of said note. And if you find from the evidence that the plaintiff did not exercise ordinary care to prevent the loss or dissipation of said mortgaged property, or the proceeds thereof, and that by reason of such failure, if any, said mortgaged property, or its proceeds, were lost or dissipated and not applied upon the indebtedness herein sued upon, you will find for the defendant, in effect, to the extent of said security, if any, so lost.

"(4) If you find and believe that said Frields wrongfully shipped out and sold the cattle described in the mortgage, and dissipated the proceeds thereof, so that the same were lost and were not applied to the payment of the indebtedness herein sued upon; and you further find that plaintiff, at the time, had knowledge, or by the exercise of ordinary care would have known, that said Frields was disposing of said cattle without applying the proceeds to the note sued upon, then you will find for the defendant in offset the amount of the value of the cattle so disposed of, if any.

"(5) The proceeds of mortgaged property to secure indebtedness should be applied to the extinguishment of such indebtedness on coming into the hands of the holder of such indebtedness, whether such indebtedness was due or not, and if you find and believe from the evidence that any of the proceeds of the cattle described in the mortgage given to secure the note sued upon came into the hands of plaintiff, directly or indirectly, and you further find and believe from the evidence that at the time such proceeds, if any, came into the hands of plaintiff, or at any time before the same were paid out, the plaintiff, through its officers, knew, or by the exercise of ordinary care would have known, that the same were the proceeds of such cattle, then you will find for the defendant in offset the amount of such proceeds, if any, coming into the hands of the plaintiff."

"(7) If you believe from the evidence that the plaintiff, by the exercise of reasonable diligence, could have collected from said Frields any sum of money on said indebtedness when same was due, and plaintiff failed to do so, then you will find for the defendant in offset the amount of any such sum or sums, if any, that plaintiff could have collected from said Frields.

"(8) Ordinary care or ordinary diligence, as used herein, is such care or diligence as an ordinarily prudent person would exercise under similar circumstances.

"(9) If you find and believe from the evidence that after the maturity of the note sued upon, on the 11th day of September, 1909, the maker of said note, A. A. Frields, had on deposit in the plaintiff bank funds belonging to him, and you further find that such funds, if any, were the property of the said A. A. Frields, and not the property of some one else, or a deposit made for a special purpose other than to the credit of Frields, and you find that plaintiff knew, or by the circumstances of the case should have known, that Frields would possibly default in the payment of said note, then it was the duty of the plaintiff to apply such funds on the note sued upon; and if you so find you will find for the defendant in offset the amount of such funds, if any."

By its first assignment plaintiff in error questions the correctness of paragraph No. 2 of the court's charge, upon the ground that

it authorized a verdict for the defendant based upon an alleged parol agreement to care for and preserve the mortgaged property, made at the time of the indorsement and transfer of the note sued upon; the contention being that the contract of indorsement is complete within itself and cannot be varied by parol evidence.

[1] An indorsement contract is an entirely separate and independent one, and the indorsement of a note is not merely a transfer thereof, but it is a new and substantive contract, embodying in itself all the terms of the instrument indorsed. Van Winkle Gin Co. v. Bank, 89 Tex. 147, 33 S. W. 862; 1 Dan. on Neg. Inst. (4th Ed.) § 669; 7 Cyc. 822; 4 Am. & Eng. Enc. of Law (2d Ed.) 477.

[2] And by the indorsement of a note the indorser in contemplation of law contracts that, if it be not paid by the maker thereof, he will pay the same. This is its legal effect, unless limited by express provision in the written contract of indorsement. Van Winkle Gin Co. v. Bank, supra; Beal v. Alexander, 6 Tex. 531; Dan. on Neg. Inst. vol. 1, § 699a; Story on Promissory Notes, § 135.

[3] The contract of an indorser is an implied one, arising from the mere writing of his name upon the back of the indorsed instrument; but the agreement imported by the signature is as plain and explicit as if it were set forth in express words, and it seems to be well settled that parol evidence is not admissible to alter, vary, or contradict the terms of this implied contract; it being treated as within the rule which forbids the introduction of parol evidence to vary a written contract. Heidenheimer v. Blumenkron, 56 Tex. 308; McKenzie v. Harris, 2 Posey, Unrep. Cas. 180; Wizig v. Beisert, 120 S. W. 954; Cresap v. Manor, 63 Tex. 485; Crooker v. Nat. Phonograph Co., 135 S. W. 647; Dwiggins v. Bank, 27 S. W. 171; Brown v. Nichols, 123 Ind. 492, 24 N. E. 339; 1 Dan. on Neg. Inst. (4th Ed.) § 717; Story on Promissory Notes, § 103; 4 Am. & Eng. Enc. of Law (2d Ed.) 484.

[4] The language of the rule implies its limitation, for it does not extend to exclude evidence offered to show a want or failure of consideration, or to impeach the original or present validity of the indorsement on the ground of fraud. 1 Dan. on Neg. Inst. (4th Ed.) § 720.

[5] Defendant in error urges that the agreement on the part of the bank to look after and preserve the mortgaged property was a part of the consideration for the transfer and indorsement of the note sued upon, and the bank's failure to look after and preserve the same constitutes a failure in part of the consideration for the indorsement contract. It is very evident that this is an effort to ingraft upon the contract of indorsement a condition imposing upon the bank a duty not imposed by the contract which the law implied as incident to the indorsement, and that it is inhibited by the rule which forbids the introduction of parol evidence in such cases.

The case of Crooker v. Nat. Phon. Co., supra, is directly in point on this question, and our views most aptly expressed in the following language: "But it is insisted by plaintiff in error that he should be allowed to show by parol the consideration of his indorsing the notes, and that the same failed. No doubt the general rule is as contended, but in showing the consideration plaintiff in error relies upon a parol agreement entered into prior to and substantially contemporaneous with the execution of the notes entirely variant from the written contract, an entirely different contract, in fact, and the breach of this parol agreement is relied upon as a failure of consideration. A party cannot be allowed in this way to avoid the effect of the established rule of evidence which forbids that a written contract be varied by a parol prior or contemporaneous agreement. The first step in the evidence would be to show that the writing does not express the real contract which was in fact quite different. Suppose a defendant when sued upon a promissory note payable in a year should offer to prove that it was agreed that payment of the note was not to be demanded for two years, and that this was the consideration of his signing, and that the consideration had failed by reason of a breach of plaintiff's agreement, by demanding payment when due, according to the terms of the written contract, with injurious consequences to himself. It is clear in such a case that, as the contract could not be thus varied by parol, such failure of consideration could not be shown."

We therefore hold that the court erred in submitting to the jury the issue of a parol collateral agreement upon part of the bank to look after and preserve the mortgaged property.

[6] Coming now to a consideration of the duties imposed by law upon the bank with reference to the collateral security, much more difficult questions arise, and preliminary to a consideration thereof it may be observed that the relation of an indorser is very similar to that of an ordinary surety upon commercial paper, and what would release a surety would also ordinarily release an indorser. 4 Am. & Eng. Enc. of Law (2d Ed.) 505; 1 Brandt on S. & G. (3d Ed.) § 3.

[7] The third and fourth paragraphs of the charge involve a consideration of the duties resting upon the holder of a promissory note to look after and preserve collateral given by the principal debtor to secure payment of the note in order that the liability of an indorser or surety may not be impaired, and upon this question it seems that no definite and authoritative rule is to be

deduced from the authorities, but that each case must be governed by its own facts. It is sometimes stated that if a creditor has a lien on the property of the principal for the payment of the debt and negligently suffers the property to be diverted from that purpose, or lost as security, the surety is discharged to the extent of the security lost; but we apprehend that this is too broad and comprehensive a statement of the duties incumbent upon the holder of commercial paper, and that ordinarily the application of the rule should be limited to those cases where the negligence consists of some affirmative act upon the part of the creditor, or a failure to perform some express or implied duty in regard to the mortgaged property resting upon the holder of the note. In this category may be placed, we think, those cases which hold that a surety is released where the creditor fails to record a mortgage given by the principal debtor, by reason of which failure the security is lost.

[8] It is well settled, too, that a creditor who has effects of the principal in his hands or under his control for the security of a debt is a trustee for all parties concerned, and, if such effects are lost through the negligence or want of ordinary diligence of the creditor, the surety is discharged to the extent that he is injured, the same as if the effects had been lost by the positive act of the creditor. In such case he is bound to be diligent in preserving such effects to the same extent that any other trustee similarly situated is bound to use diligence. Brandt on S. & G. vol. 1 (3d Ed.) § 498. This is predicated upon the fact that the security is in the hands of the creditor or under his control, from which arises the implied duty resting upon all trustees to properly care for the trust property and apply the same to the purposes for which it was intended.

In Murrell v. Scott, 51 Tex. 520, the court stated the duties resting upon a creditor under such circumstances substantially as above, but followed it up with this pertinent and most significant language: "Where, however, the property is placed, not in the hands of the creditor, but in the hands of a trustee, the common agent of the owner and the creditor, the creditor is not a bailee, and is not chargeable as such. In accepting the deed of trust, he doubtless assumes some new obligations; but, so long as he discharges those obligations, he is not responsible for the negligence or mismanagement of the trustee. If he procures or connives at such negligence and mismanagement, they may well be imputed to him as his own. But the proposition that the trustee is the agent of the creditor in such a way as to make the creditor responsible for the trustee's want of diligence is one to which we do not assent; nor are we prepared to affirm as law that a subsequent ratification or assent by the creditor to what the trustee had already done or neglected to do will relate back and make him responsible for a loss to the trust fund already incurred."

[9] In the cases at bar, the mortgaged property was not in the possession of the bank, nor under its control, but it affirmatively appears that at the time Powell consummated the sale of the cattle to Frields it was understood that they were to remain in the possession of Frields and be removed beyond the limits of this state into Caddo county, Okl., and the very mortgage which Powell took provided for this removal. Ordinarily, permission by a mortgagee to a mortgagor to make such a removal would be an affirmative act of negligence which would release the surety if by reason of the removal the mortgaged property was lost. Means v. Worthington, 147 S. W. 345, recently decided by this court. However, the consent of the bank to the removal of the cattle to Oklahoma does not release Powell from his liability as indorser, because he consented to and was a party to such removal, and the positive act of a creditor resulting in loss of the security does not lessen the liability of the surety if the surety has expressly or by implication assented thereto. Brandt on S. & G. (3d Ed.) § 509. The record in this case fails to disclose any active or affirmative act of negligence whatever on the part of the bank, and if there was any negligence it was passive in its nature, based upon its failure to discover that Frields was disposing of the mortgaged property, and its failure to mature the note by virtue of the clause giving such right in case of such disposal, and instituting proceedings to subject the property to the payment of the note.

As bearing upon the duty of a creditor under circumstances of inactivity merely, we quote from some of the authorities. In Grisard v. Hinson, 50 Ark. 235, 6 S. W. 907, the principal debtor on a promissory note on which the defendant was surety mortgaged a crop of corn, which never came into the possession of or under the control of the mortgagee. On maturity of the note the surety took no steps to compel the mortgagee to foreclose or proceed against the principal debtor, nor did he take any other action to entitle himself to the control of the mortgage. The corn was afterwards disposed of by the mortgagor, and, in overruling the contention of the surety that he had been released by the negligence of the bank resulting in loss of the security, the court said: "Whenever funds or securities are placed in the hands of a creditor by a principal for the security of a debt, and they are lost through the want of ordinary diligence of the creditor, the surety bound for the payment of the debt so secured is discharged to the extent of the loss. The creditor, in such a case, assumes the duty of

preserving such funds or securities, and is bound to be diligent in the discharge of the duty. If he surrenders or abandons the funds or securities, or fails to perform any act necessary to preserve their validity or legal force and effect, or in case of the security consisting of perishable property, he allows it to be taken out of his possession and destroyed, or if, for the want of ordinary care and attention, he allows it to perish and become worthless in his hands, the loss should fall on him, and the surety should be exonerated to the extent of the injury. Kemmerer v. Wilson, 31 Pa. 110; Pickens v. Yarborough, 26 Ala. 417 [62 Am. Dec. 728]; Noland v. Clark, 10 B. Mon. 239; Jennison v. Parker, 7 Mich. 555; Seller v. Jones, 22 Pa. 423; Slevin v. Morrow, 4 Ind. 425; Lee v. Baldwin, 10 Ga. 208; Shippen v. Clapp, 36 Pa. 89; Lumsden v. Leonard, 55 Ga. 374; Baker v. Briggs, 8 Pick. (Mass.) 128, 19 Am. Dec. 311; Trotter v. Crockett, 2 Port. (Ala.) 401. Where the funds and securities are placed in the hands of the creditor, there is a duty to preserve the funds and securities assumed by the creditor, and the damages he is liable for are the result of a failure to discharge that duty. But in this case the 95 bushels of corn never were in the possession of appellants. They were in the hands of Price, where they were intended to remain until default was made in the condition of the mortgage. Appellants never had assumed to take possession or control of the corn. Under these circumstances, are appellants liable for the loss of the corn? Hinson is equally bound with his principal to pay the note sued on. Appellants are entitled to proceed against him without resorting in the first instance to their mortgages. They are not deprived of their right to resort to the surety because a mortgage was executed to them. Hinson was as much in default, and guilty of laches, in not paying off the note sued on, as Price, his principal, and cannot rightfully claim to be damaged by the act of the appellants; for he was entitled to pay the note at any time after it became due, and take control of the mortgages, or, through the aid of a court of equity, upon giving the proper indemnity against costs and delay, to call upon appellants to proceed against his principal, and require them to do the most they could for his benefit, or, under our statutes, to compel them to commence suit, and proceed in it with due diligence, in the ordinary course of law, to judgment and execution. If he was damaged, it was as much by his own neglect and failure to discharge his duty as by any omission of appellants. If he had performed his obligation to appellants, he would have had control of the note and mortgage before any part of the 95 bushels of corn was consumed or disposed of. To allow him now to take advantage of the delay of appellants in foreclosing the mortgage, under such circumstances, seems very much like allowing a man to take advantage of his own wrong. If appellants were guilty of negligence, he was guilty of a positive omission of duty. They were under no higher obligation to foreclose the mortgage than he was to pay the note and foreclose the mortgage himself. Under these circumstances, it would be contrary to the most obvious principles of justice to inflict upon appellants the loss of their debt. 'The surety,' says Lord Eldon (Eyre v. Everett, 2 Russ. 381), 'has no right to say that he is discharged from the debt which he has engaged to pay, together with the principal, if all that he rests upon is the *passive conduct* of the creditor in not suing. He must himself use diligence, and take such effective means as will enable him to call on the creditor either to sue, or to give him (the surety) the means of suing.' Hinson used no diligence to give himself the means of suing, or call upon appellants to foreclose, but quietly and passively stood by until the corn was consumed, and then demanded that appellants bear the consequences of his negligence. They are not liable to him for the loss of the corn, and he is not entitled to exoneration to any extent. Clopton v. Spratt, 52 Miss. 251; Freaner v. Yingling, 37 Md. 491; Schroeppell v. Shaw, 3 N. Y. 446; Id., 5 Barb. [N. Y.] 580; Richardson v. Insurance Co., 68 Va. 749; Banking Co. v. Brick, 37 N. J. Law, 307; Philbrooks v. McEwen, 29 Ind. 347; Cherry v. Miller, 7 Lea [Tenn.] 305; 1 Story, Eq. Jur. §§ 326, 501, 502, 639."

In Vance v. English, 78 Ind. 80, it is said: "It is also the duty of the creditor to use all reasonable care in the preservation of all collateral securities which he may have acquired for the security of his debt, and to which the surety has a right to become subrogated on payment of the debt; but it has never been held that the mere passiveness of the creditor in the collection of his debt, either of the principal debtor, or from collateral securities held by him, is sufficient ground for discharging the surety. As regards collateral securities, the creditor must be guilty of some wrongful act, such as by a release or fraudulent surrender of such securities in order to discharge the surety. In treating of the general subject of the duties and liabilities of a creditor, as to collaterals which he may hold for his debt, and in which a surety may be interested, the court, in the case of Schroeppell v. Shaw, 3 N. Y. 446, after reviewing several decided cases, says: 'Thus, it will be seen that, in reference to collateral securities, the rule is the same as in reference to the collection of the debt of the principal debtor. The creditor is under no obligation of active diligence for the protection of the surety, so long as the surety himself remains inactive.

Until the surety moves in the matter, it is enough that the creditor holds himself in readiness to transfer to him, when he applies, all the securities he holds, that he may have the benefit of such securities in aid of his own responsibility.' See, also, the following authorities: Philbrooks v. McEwen, 29 Ind. 347; Hayes v. Ward, 4 Johns. Ch. (N. Y.) 123, 8 Am. Dec. 554; Freaner v. Yingling, 37 Md. 491; Brandt on Suretyship, §§ 372–374. Numerous authorities are cited on behalf of the appellant, but none of them are in conflict with the principles enunciated as above. The appellee was not bound to any active diligence concerning the mortgage given to secure the notes indorsed by the appellant, and it was not averred that he made any release, transfer, or other disposition of the mortgage prejudicial to the rights of the appellant. He had the right to maintain an action on the notes against the maker and indorsers without resorting to the mortgage. Allen v. Woodard, 125 Mass. 400 [28 Am. Rep. 250]."

In Brown v. Nichols, 123 Ind. 492, 24 N. E. 339, the same court said: "One theory seems to be that it was the duty of the appellee to protect the mortgaged property against waste, and having failed so to do, and, as the result, the value of the property having been greatly decreased, and because thereof it failed to sell for a sum sufficient to pay the amount due the appellee, that the appellant is not liable upon his indorsement. * * * The appellee was not required, to hold its indorser, to resort to extraordinary remedies after the notes became due. Thompson v. Campbell, 121 Ind. 398, 23 N. E. 267; Iles v. Watson, 76 Ind. 359; Titus v. Seward, 68 Ind. 456; Holton v. McCormick, 45 Ind. 411; Sims v. Parks, 32 Ind. 363; Hubler v. Taylor, 20 Ind. 446; Sayre v. McEwen, 41 Ind. 109; Cheek v. Norton, 2 Ind. 321; 26 Amer. Law Reg. 201, and authorities cited. And much less was the appellee required to resort to extraordinary and doubtful remedies, in advance of the maturity of the notes, to save the appellant harmless from his contract of indorsement. * * * The assignee is not presumed to know, and cannot know in advance of the maturity of the obligation, that it will not be paid when due, and may and has the right to remain inactive until it matures. If legal proceedings in advance of the maturity of the note become necessary to protect the indorser, it is for him, and not for the assignee, to institute such proceedings. * * * As we have already seen, this is not a case where the ordinary relations of creditor and principal and surety exist. But, if otherwise, there is no pretense that the appellee at any time relinquished, in whole or in part, the mortgage lien, or that it did any affirmative act whereby the security was impaired. All that is claimed is that the appellee remained inactive until the notes matured."

In Carver v. Steele, 116 Cal. 116, 47 Pac. 1007, 58 Am. St. Rep. 156, it is said that the rule is that the creditor loses no right against the indorser, whose liability has become fixed, by simple failure to enforce his lien against property mortgaged for security of the debt. In such a case the remedy of the indorser is to pay the debt himself, and then enforce his rights against the principal debtor. Rogers v. Bank, 146 Mich. 639, 110 N. W. 74, 18 L. R. A. (N. S.) 530; Rand on Commercial Paper, pars. 923, 924; Colebrooke on Collateral Security (2d Ed.) § 400. It seems to be the settled law in this state, also, that indorsers, being liable upon the indorsement contract, if they desire the benefit of any collateral security, must pay the debt and become subrogated to the rights of the creditor. Nesmith v. McLemore, 23 Tex. 442; Williams v. Rosenbaum, 79 S. W. 594; Levy v. Wagner, 29 Tex. Civ. App. 98, 69 S. W. 112; Crozier v. Stephens, 2 Willson, Civ. Cas. Ct. App. § 801. This rule marks an important distinction in the similarity which otherwise exists between the rights and liabilities of indorsers and ordinary sureties. A surety has the right to require the creditor to first exhaust his remedy against the principal debtor and any collateral security which he may hold; but this is not true of an indorser, because he is liable under the law merchant upon his separate and independent contract.

Mr. Brandt, in section 3, vol. 1, 3d Ed., of his work on Suretyship and Guaranty, notes the distinction as follows: "The rights, duties, and liabilities of ordinary indorsers and sureties are so nearly alike that most acts which will discharge the one will also discharge the other. But there are points of distinction between them that are important to observe, 'lest a principle exclusively applicable to one be perverted. For instance, without due demand and notice, at the maturity of a note, an indorser will be discharged—a surety continues liable upon his contract, though the creditor sleeps. A surety may spur the creditor into activity by notice to pursue the principal debtor, on pain, for neglect, that the surety will be no longer bound—not so an indorser. The latter cannot call upon the holder of a protested note to sue the drawer, and, if he refuses, thereby relieve himself; for, if he wishes instant recourse to the principal, it is his duty to pay the note and sue for himself."

If this distinction be sound, and it seems to be well settled by the authorities in this state and elsewhere, and to the mind of the writer is supported by reason, then, since the creditor can pursue an indorser without first resorting to the collateral, it would seem to necessarily follow that no negligence on the part of the creditor towards security not in his hands or subject to his control, resulting in its loss or dissipation, would re-

lieve the indorser from his liability, unless the negligence was an affirmative act upon his part. As to this, however, it is not necessary to decide, for, as above stated, the negligence of the bank in this instance towards the mortgaged property, if any, was passive in its nature, based upon its failure to discover that Frields was disposing of the mortgaged property and in failing to declare the note due and instituting proceedings to subject the property to the payment of the debt.

We deem it unimportant to inquire whether the bank was negligent in this respect in the sense that an ordinarily careful and prudent person, under like circumstances, would not have so comported himself, but hold, as a matter of law, under the authorities cited, that if its action was negligence in the ordinary meaning of the term, it did not operate, under the circumstances, as a release of Powell from liability upon his indorsement contract. This is especially true in view of the fact that the maker of the note and the mortgaged property were both in a foreign jurisdiction.

[10] Under article 1204, R. S. 1895, an indorser may be sued without the necessity of previously or at the same time suing the principal debtor when the principal debtor is a nonresident of the state, and certainly an indorser should not be relieved from liability upon ground of negligence predicated upon the failure of the creditor to go beyond the limits of the state and subject property there to the payment of its debt by resorting to extraordinary remedies in advance of the maturity of the note.

For the reasons indicated, the third and fourth paragraphs of the court's charge should not have been given.

[11] Referring to the ninth paragraph of the court's charge, we find that the jury, in effect, are instructed that it was the duty of the bank to apply upon the note any funds on deposit with it by Frields at the maturity of the note. There is some difference of opinion as to whether a bank, being the payee, or holder of a note, discharges a surety by failing to apply thereon money of the maker which happens to be on deposit with it at or after the maturity of the note. 1 Brandt on S. & G. (3d Ed.) § 487; 32 Cyc. 224; 27 Am. & Eng. Enc. of Law (2d Ed.) 520.

In Houston v. Braden, 37 S. W. 467, the question is discussed by the San Antonio Court of Civil Appeals, and the conclusion reached that such a failure upon part of the bank will not release the surety. This is in accordance with the weight of authority, and to our minds is supported by the better reason. The following authorities adopted this view: Davenport v. State Banking Co., 126 Ga. 136, 54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. Rep. 68, 7 Ann. Cas. 1000; Citizens' Bank v. Elliott, 9 Kan. App. 797, 59

Pac. 1102; Citizens' Bank v. Booze, 75 Mo. App. 189; Kirkland Land Co. v. Jones, 18 Wash. 407, 51 Pac. 1043; British Columbia Bank v. Jeffs, 15 Wash. 230, 46 Pac. 247; Strong v. Foster, 17 C. B. 201, 25 L. J. C. P. 106, 84 C. L. 201; Martin v. Mechanics' Bank, 6 Har. & J. (Md.) 235; McShane v. Howard Bank, 73 Md. 135, 20 Atl. 776, 10 L. R. A. 552; Bank v. Hill, 76 Ind. 223, 40 Am. Rep. 239; Bank v. Sheahen, 149 Ill. App. 225; Voss v. Bank, 83 Ill. 599, 25 Am. Rep. 415; Bank v. Smith, 66 N. Y. 271, 23 Am. Rep. 48.

The courts of Delaware, Arkansas, and Kentucky have adopted the contrary view, and in Bank v. Henninger, 105 Pa. 496, the courts of Pennsylvania departed from the views expressed in the earlier case of Bank v. Le Grand, 103 Pa. 309, 49 Am. Rep. 126, which was quoted extensively by the San Antonio Court in Houston v. Braden, supra.

For the reason indicated, the court erred in giving the ninth paragraph of its charge.

[12] The fifth paragraph of the charge, while not wholly correct, embodies a correct principle, viz.: If any of the proceeds of the mortgaged property came to the hands of the bank, it was its duty to appropriate and apply the same to the payment of the note sued upon if it knew that such moneys were proceeds of the mortgaged property, or if the circumstances were such as to charge it with such knowledge. It is but the application of the principle that, when mortgaged property comes into the hands or under the control of the creditor and is then lost by his negligence or design, the surety is released to the extent of the security so lost. Murrell v. Scott, and Grisard v. Hinson, supra; 1 Brandt on S. & G. (3d Ed.) § 498. It appears that a portion of the proceeds of the mortgaged property was deposited by Frields with the bank, which he was afterwards permitted to check out, and to permit him to do so, with knowledge of the fact that such moneys were the proceeds of the mortgaged cattle, would be in violation of the rule just quoted and would release Powell to that extent; and the same rule would apply, although the bank had no actual knowledge of the character of the moneys, if the surrounding facts and circumstances were sufficient to charge them with notice of the character of such money, or put them on inquiry in regard thereto. The court's charge upon this phase of the case, however, was erroneous in instructing that the bank was responsible for any of the proceeds which may have indirectly come into its hands.

We note Powell alleges that the bank authorized Frields to sell and dispose of the mortgaged cattle, but no such issue is submitted in the charge. Upon retrial, if there should be evidence to sustain this allegation, it should be submitted to the jury, as this would be an affirmative act on the part of the bank in consequence of which the securi-

ty was lost and would release the surety to the extent of the value of the property so disposed of and appropriated by Frields.

[13] The seventh paragraph of the court's charge was improper and should not have been given. The liability of an indorser is by virtue of his contract and is fixed by protest or suit within the time prescribed by statute, and is in no wise dependent upon any other diligence to collect from the principal obligor. This paragraph of the court's charge involved no question of a release based upon the negligence of the bank towards the collateral security, which is an entirely different question, but was predicated upon the theory that the indorser was released if the bank by the exercise of reasonable diligence could have collected any money from Frields at the time of the maturity of the indebtedness and held the surety released to the extent of any moneys which the bank could have collected from Frields by the exercise of such diligence. We think the liability of an indorser, when properly fixed by demand, protest, and notice or suit within the time prescribed by statute, is in no wise dependent upon the holder exercising any other diligence to collect from the principal obligor.

The seventeenth assignment, complaining of the introduction of certain testimony of the witness Cowden, is well taken. While we do not regard it as reversible error under all of the circumstances, yet upon retrial it should be excluded.

[14] The action of the court in sustaining objections to the testimony of Cowden and Bryan, referred to in the nineteenth and twentieth assignments, cannot be reviewed, because the bills of exception do not disclose what objections were urged against the testimony; it being stated merely that objection was made and the testimony excluded.

The twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments are not presented in such a way as to entitle them to consideration, and they are not considered. This is true of many of the assignments; but we have not applied the rules strictly, as certain assignments properly presented require a reversal of the case, and we have, in view of a retrial, deemed it best to dispose of some which we otherwise would not have considered. Under the views which we have of the duties of the bank towards the mortgaged property, it is apparent that much of the testimony admitted over the objection of plaintiff, and complained of in various assignments, is inadmissible, and upon retrial should be excluded.

The assignments complaining of the change of venue are overruled.

We have not discussed in detail the numerous assignments, as it would serve no useful purpose; our views in regard thereto being sufficiently indicated by what has been said herein. In our discussion of the court's charge we have in some instances gone beyond the scope of the assignments and supporting propositions, but have done so in order that upon retrial the lower court could try the case in accordance with the view which we have of the law as applied to the conditions disclosed by the record.

Reversed and remanded.