## GOLDEN v. FIRST STATE BANK OF BOMARTON.
### No. 896.

Court of Civil Appeals of Texas. Eastland.

May 8, 1931.

Dennis P. Ratliff, of Haskell, and J. S. Kendall, of Munday, for appellant.

J. A. Wheat, of Seymour, for appellee.

LESLIE, J.

The First State Bank of Bomarton, appellee, sued A. H. Golden, appellant, on three promissory notes, past-due and unpaid, alleged to have been executed by one W. F. Hedrick and Golden, and for the respective sums of $121, $50, and $25, etc.; the last note carrying a credit of $16.48. Hedrick was not made a party to the suit, but it was alleged that he was notoriously insolvent, and that his whereabouts were unknown to the plaintiff. The defendant answered by general denial and a special plea, to the effect that he signed the notes as a surety for Hedrick, the principal. That such fact was known to the bank at the time, and that he (Golden) did not receive any of the proceeds of the loans to Hedrick. The special plea went further and alleged that, at the time of the execution of the notes, the bank took from Hedrick a chattel mortgage on a certain crop that was of sufficient value to satisfy the indebtedness evidenced by the notes. That same was taken for the purpose of protecting appellant against loss by reason of said suretyship. That the bank, in violation of its duty to collect said indebtedness from Hedrick, negligently permitted him to sell and dispose of the cotton and apply the proceeds thereof to his own use and benefit. That such funds were, through the "acquiescence and negligence of the bank, lost to appellant." At the conclusion of the testimony the court peremptorily instructed the jury to return a verdict in favor of the bank. Judgment was rendered accordingly, and Golden appeals.

The correctness of the ruling of the trial court in giving the peremptory instruction to the jury is challenged by four propositions. In substance they are:

First, that the pleadings and the evidence required the submission to the jury of the issue of whether or not Hedrick, the principal on the notes, was insolvent;

Second, whether or not his residence at the time of the filing of the suit was unknown to the plaintiff;

Third, whether or not the defendant (appellant) was a mere surety on the notes; and,

Fourth, whether or not any of the property covered by the mortgage taken by the plaintiff (appellee), to secure the notes sued on, had been lost by reason of the negligence of the plaintiff bank.

This appeal will be disposed of on the theory that Golden was a surety on the note. That renders proposition No. 3 immaterial.

The first and second propositions will be considered together, although we think the bank was entitled to prosecute the suit against the surety alone, and without suing the principal, provided it alleged and proved either that the principal was notoriously insolvent, or that his whereabouts were to it unknown at the time of the filing of the suit.

The fault in the court's giving the peremptory instruction is claimed to lie in the fact that the allegations of insolvency and un-

known whereabouts of Hedrick were supported merely by the testimony of interested witnesses. In appellant's brief the contention is expressed in this language: "It might be said that the testimony as to the insolvency of Hedrick is uncontradicted, but the rule is well established that the jury would have been at liberty, if the issue had been submitted to them, to reject the testimony of Ross because he was an interested witness." The same contention is advanced under the proposition with reference to the whereabouts of the defendant being unknown to plaintiff.

■ The proposition of law contended for by the appellant is correct under some states of fact, but not under all. If it be conceded that said issues in the instant case were supported solely by the testimony of interested witnesses, it does not necessarily follow that the court erred in giving a peremptory instruction to the jury based thereon. The testimony supporting the plaintiff's allegations in the above respect is clear, direct, and positive, free from contradictions, inconsistencies, and circumstances tending to cast suspicion on the same. In such state of the testimony there appears to be a well-established rule authorizing the court to instruct a verdict. No better statement of the rule has been found than that by Judge Hamilton in the opinion in M. H. Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966, 972, which is as follows: "A jury cannot arbitrarily discredit a witness and disregard his testimony in the absence of any equivocation, confusion, or aberration in it. It is not proper to submit uncontradicted testimony to a jury for the sole purpose of giving the jury an opportunity to nullify it by discrediting the witness, when nothing more than mere interest in the case exists upon which to discredit such witness. The testimony must inherently contain some element of confusion or contrariety, or must be attended by some circumstance which would render a total disregard of it by a jury reasonable rather than capricious, before a peremptory instruction upon the evidence can be said to constitute an invasion of the right of trial by jury. That it is proper for a trial court to instruct a verdict upon the uncontradicted testimony of interested parties, when it is positive and unequivocal and there is no circumstance disclosed tending to discredit or impeach such testimony, can be said to be a settled rule in Texas." Authorities to this effect are numerous: McKeever et ux. v. Dittman (Tex. Civ. App.) 262 S. W. 1054; Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276; T. & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683; Still v. Stevens (Tex. Civ. App.) 13 S.W.(2d) 956; Sigmond Rothschild Co. v. Moore (Tex. Civ. App.) 22 S.W. (2d) 533.

Further, during the trial, J. W. Ross, active vice president of the plaintiff bank, testified that, at the time of filing the suit, he did not know the whereabouts of Hedrick. He detailed various circumstances disclosing his lack of such knowledge, and his attempt to locate him. In addition he further stated: "Yes, this suit was filed along about the 25th day of March of this year in Justice Court, and at the time of filing the suit I made an effort to find out where Mr. Hedrick was. I asked Mr. Golden where he was. He told me he could not locate him but understood he was down near Breckenridge and he had written him a letter and his letter was returned to him, and along later he told me that someone had told him that Mr. Hedrick was down in the Van oil fields—down in that part of the country somewhere."

Although Mr. Golden was present at the trial and testified in his own behalf, he at no time contradicted the above testimony.

As to the insolvency of Hedrick, it is unnecessary to detail the testimony. He appears to have been a tenant cotton farmer, destitute of credit and financial resources at a time when the season and the market were adverse. In brief, the testimony of each litigant, and certainly when taken together, compels the conviction that Hedrick was notoriously insolvent, as alleged. The court did not err in giving the peremptory instruction upon the issues and testimony under consideration.

We come now to a consideration of the last proposition, the fourth, wherein it is contended that the court erred in not submitting to the jury the issue as to whether or not any of the property covered by the mortgage taken by the plaintiff to secure the notes sued on, was lost to the defendant by reason of the negligence of the bank. The chattel mortgage introduced in evidence shows that it covered Hedrick's 1929 cotton crop to be raised "on A. H. Golden Farm, about nine miles from Bomarton, Texas." Concerning the rental contract between himself and Hedrick, Golden testified: "I was to get half and he half, and I received deposit slips for my half of the cotton raised, one for $24.48, and one for $17.75, which represented what little cotton was raised. * * * I do not know whether he raised any more cotton than this on the place or not. * * * Mr. Ross has a letter from Mr. Hedrick, stating there would be between 1100 and 1200 (lbs) more of cotton to be gathered. What became of that I do not know. There was a very small amount of cotton raised down there during the year of 1929. * * * I could not say how much there was left in the field. It was pretty thin."

■ This is about the tenor of the testimony as it relates to the cotton on Golden's place, and since the mortgage did not cover what is spoken of as the Brooks farm, it is unnecessary to consider the same in relation to the issues here presented.

October 31, 1929, at the close of the season, the tenant, Hedrick, wrote the bank a letter in which he reported the amount of cotton produced on the Golden farm, as well as the disposition made of the major portion of the proceeds of the sale thereof. 1,360 pounds brought $48.96, $24.48 of which was turned over to Golden, who, in his testimony, acknowledged receipt thereof. From the other one-half was deducted $8 for picking, leaving the sum of $16.48, which we find was, in fact, credited upon one of the notes. A second sale of 1,190 pounds produced $35.70, one-half of which was delivered to Golden and receipt thereof acknowledged by him. From the other one-half $10 for picking was deducted, leaving the amount of $7.85, which does not seem to have been credited on any note or otherwise accounted for by the tenant. Although Golden testified as a witness, he did not place any value upon the remnant left in the field. No stronger case is made for the defendant by the testimony, a careful consideration of which by this court convinces us that the value of no cotton covered by the mortgage was lost to Golden through any character of negligence upon the part of the bank, and the testimony of either or both litigants establishes that fact. The bank's conduct in collecting and applying the proceeds for which the collateral sold does not rise to the level of passive negligence on the part of the bank in failing to enforce the mortgage and preserve the value of the collateral. The bank never had possession of the cotton, and in such case and under the circumstances conclusively established by the testimony, the rule of law applicable, and as relating to the authority of the trial court to give a peremptory instruction thereunder, is clearly stated in Dillard v. Chandler (Tex. Civ. App.) 157 S. W. 303, 304, as follows: "We understand the rule to be, however, generally that, where the pledged property is not committed into the hands of the mortgagee, but is permitted to remain with the mortgagor, the mere indulgence or even negligence in the matter of delaying a foreclosure through legal proceedings, even though it results in the loss of the security, does not have the effect in law to release the sureties on the debt. First Nat. Bank v. Powell (Tex. Civ. App.) 149 S. W. 1096. The rule may be, and is, different where the mortgaged property is in the possession and under the control of the mortgagee or where he does some affirmative act in respect to which the sureties are at such disadvantage as to be unable to protect themselves by a compliance with their contract to pay, and thus be subrogated to the mortgagee's right, and the mortgaged property is in consequence thereof lost to them. Bennett v. Taylor, 43 Tex. Civ. App. 30, 93 S. W. 704, and authorities there cited. The evidence fails to show that any of the mortgaged property ever came under the control or in the possession of appellee, or that he ever by any overt act negligently or otherwise permitted the mortgaged property to be put beyond the reach of a foreclosure which was equally to be had by the complaining sureties as well as himself."

The rule has had frequent application under similar circumstances, as may be seen from the following authorities: Ramsey v. Wahl et al. (Tex. Com. App.) 235 S. W. 838; Self Motor Co. v. First State Bank of Crowell (Tex. Civ. App.) 226 S. W. 428; Womack v. Davidson (Tex. Civ. App.) 242 S. W. 1107; Southern Surety Co. v. Klein (Tex. Civ. App.) 278 S. W. 527; First Nat. Bank v. Powell (Tex. Civ. App.) 149 S. W. 1096.

There is no showing in the testimony that the bank did any affirmative act or omitted any legal duty calculated to defeat the lien or to prevent the surety from resorting to the mortgaged property for the purpose of reimbursing himself. Under such circumstances and the general rule as stated in the above authorities, the bank owed no duty of active vigilance to the surety to enforce the collection of the indebtedness arising from the obligation.

The proposition under consideration is overruled, and for the reasons assigned the judgment of the trial court is affirmed.