## MEYER v. PECOS MERCANTILE CO.
### No. 2638.

Court of Civil Appeals of Texas. El Paso.
March 10, 1932.

W. A. Hadden, of Ft. Stockton, and Hill D. Hudson, of Pecos, for appellant.

J. E. Starley and Russell, Hubbard & Kerr, all of Pecos, for appellee.

PELPHREY, C. J.

Appellee filed this suit against appellant in the district court of Reeves county, Tex., on the 14th day of October, 1929.

The right of action alleged was that appellant had on July 2, 1925, executed his note in the sum of $691.61, payable December 28, 1925, with interest at the rate of 10 per cent. per annum, and providing for an additional 10 per cent. if placed in the hands of an attorney for collection; that the note was past-due and unpaid; that appellant had refused to pay same; and that appellee had been forced to employ an attorney to collect same.

Appellant, on April 20, 1931, filed his original answer, including a general demurrer, a general denial, and a plea of the four-year statute of limitations (Rev. St. 1925, art. 5527).

The cause was tried at the April term, 1931, and resulted in a judgment for appellee in the sum of $1,203.67.

Appellant excepted and gave notice of appeal to this court. Appellant's assignments of error are:

"1. The court erred in overruling defendant's plea of limitations and rendering judgment for plaintiff.

"2. The court erred in holding that the testimony of the witness Russell, as to his undisclosed efforts to procure service, was a showing of diligence sufficient to remove the bar of limitation.

"3. The court erred in holding that the secret intention of plaintiff's counsel to procure service was sufficient to remove the bar of limitation.

"4. The court erred in not holding that limitation ran until service in 1931, where the record affirmatively shows no citation was issued from October 28th, 1929, until March 18th, 1931. Five terms of Court elapsing between such citations."

Under these assignments appellant presents the following proposition: "To toll the statute of limitation there must be a bona fide intention that process be issued and served and due diligence exercised that such process issue and be served and such diligence is a continuing one."

Appellee counters with the following counter propositions:

"The trial court having found there was a bona fide intention that process be issued and served in this cause and having found that due diligence was exercised that such process be issued and served, which diligence the court found continuous, as shown by the judgment entered, such findings having support in the evidence, should not be disturbed by an appellate court."

Second. "The trial court having found as an issue of fact that Appellee (plaintiff below) had not been negligent in the issuance and service of process in this cause, which finding was supported by the testimony of appellee's counsel, the court's finding in Appellee's favor concludes the matter."

The petition of appellee contained the allegation that appellant resided in Reeves county, and the testimony of Miss Vannie Ingle, county and district clerk of Reeves county, shows that a citation was issued October 22,

1929; that both the copy and original of such citation are with the papers of the case; that no official return appears on the original, but that across the front of same appears, "Corpus Christi," which she says she judges to be in the handwriting of the former sheriff of Reeves county; that another citation was issued on October 28, 1929, to Nueces county, Tex.; that the latter citation is not among the papers; that the papers show that appellant was served on March 18, 1931. Appellant testified that he had lived in Corpus Christi for six years; that he had a telephone which had been listed in the Corpus Christi directory for about four years; that Corpus Christi was a town of about 4,000 people; that he had been engaged in the contracting business there and was a candidate for county commissioner in 1928; that he had not been out of the state since executing the note except on two occasions when he was up in New Mexico for one or two days at a time; that he had been in Loving county since the 1st of October until March the 18th, when he was served; that that was the first and only notice he had of the filing of the suit; that he formerly lived and was postmaster at Portersville; that Mr. Goodrich and all of them knew his Corpus Christi address; that he told Mr. Taggart, manager of appellee, now deceased, that he was going to Corpus Christi at the time he executed the note; that he left Loving county in 1921, and went to California, remained there about three years, then went to Corpus Christi; that he came back to Loving county nearly every year after he left there; that he was there during July and August of 1929; that he came there August 1, 1930, and had been there ever since, except two weeks at Christmas when he went to Corpus Christi; and that he had made his home in Portersville after he came back in 1930. Henry Russell, attorney for appellee, testified:

"I, as attorney for the Pecos Mercantile Company, filed this suit. It was filed the 14th of October, 1929. The suit was filed October 14th, 1929, and approximately a week thereafter we requested citation to be issued to the defendant, Meyers, in Reeves County, Texas; we understood at that time that he was a resident of Reeves County, or Loving County, Texas, and Loving County is attached to Reeves County for judicial purposes. My understanding at that time was that he was living in Loving County. In view of the history of the debt, the plaintiff was anxious to secure service; I sent Mr. Woods to Portersville, and instructed him to go there, and see if he could find out where Mr. Meyer was, and Mr. Woods returned with the information that Mr. Meyer was in California; Mr. Woods was an attorney, working for me, and was associated with me in the filing of the case and in attempting to secure service in the case. I then made every effort I could with the information I then had to secure service on Mr. Meyer. The suit was filed in good faith with the intentions of securing service. As to whether or not I did anything myself to postpone or delay the securing of service, or whether I did everything I could to secure service; after Mr. Woods' report to me we prepared a citation by publication, and prepared a bond and affidavit for writ of attachment, and an affidavit that he was a nonresident, and after we prepared them I brought them to the Court House and I was informed at that time that the defendant was in Corpus Christi, and could be located there, and thereupon I requested a new citation be sent to Corpus Christi and the citation was issued to Corpus Christi. It was not served. The citation was returned to my office and it, together with the other papers, when Mr. Woods left, and the correspondence I had in an effort to secure the service, was all lost. I had made a search to try to find the citation that was returned, and I also searched for the correspondence but neither can be found, and I am sure that written on the back of the citation was 'this man not to be found in this county' and when court met we didn't have the citation, and continued the case until we could secure the citation from the Sheriff at Corpus Christi, and when we secured it that was what it showed. After the return of that citation, as quickly as we had the time Mr. Woods made a further examination and investigation and I made further investigations myself to determine where we could find this man. I got some information that he was in California, and some information that he was in Corpus Christi, and we got information that he returned here continuously, and could be found here if we waited until he returned, and based on that information we waited until the summer when Mr. Woods prepared the second set of papers with the view of securing service, and Mr. Woods stated to me one day that he had information Mr. Meyer was in the County, and I directed him to go to Portersville, and he did, and then he came back and reported he had information that Mr. Meyer was gone, but would be back at most any time, and based on that we didn't feel like making an affidavit for citation by publication, but determined to wait until we were able to locate him on his return trip. There was also another citation issued after the second one. That one was issued in the summer, and I am unable to find that one, and was in 1930. I know that that citation was issued. I can state further that in connection with waiting for Mr. Meyer we kept the citation prepared in the office at all times with the view of serving it the first time we saw him, and the first time I saw Mr. Meyer he was served just as quickly as I could get to it. * * * From the time the suit was filed until I finally located him I was making a continuous effort to find him and serve him.

"I spoke of the citation that was issued to Nueces County, and being returned to my office, I suppose that that is the citation which shows to have been issued in October, 1929. I don't recall when that citation was returned to my office, but it was after the term of court, because we did not take judgment at the November Term of the District Court because we did not know whether or not we had service. At that time I directed Mr. Woods to make an effort to locate this man. So far as my record shows, or my recollection, no other citation was issued to Nueces County. * * * I made no personal investigation in Portersville myself to locate this man, but I instructed Mr. Woods to make the investigation, but I talked to everyone I saw who I thought could give me any information about it, and my reason for that was that my client was kicking me on the shins about getting the service. I did not write to him because I thought he was dodging service. As to whether or not the only effort I made to catch him at Corpus Christi was the citation I had issued which was returned and lost; yes, and I told Mr. Woods to investigate and see if he was there and Mr. Woods wrote lots of letters there. The answers to those letters I do not know, and have not with me, and do not know their contents. * * * I testified that I kept a citation prepared in my office all the time. That citation was never issued. I kept it ready for the issuance by the clerk."

Mr. Meyer, upon being recalled, said that he had not made any effort to dodge service; that he had been openly on the streets time and again; and had seen and spoken to Mr. Russell many times the fall before.

Mr. Russell, upon being recalled, testified that if he had seen Mr. Meyer on the streets during the fall of 1930, he had no recollection of it, and that the first time he saw him he had him served.

It is well settled that the mere filing of the petition does not toll the running of the statute of limitations, but there must also be a bona fide intention to have process issued and served and due diligence exercised to see that such is done. Austin, Banking Commissioner, v. Proctor (Tex. Civ. App.) 291 S. W. 702, and cases cited.

In this case the district clerk's record shows the issuance of three citations, the first on October 22, 1929, eight days after the suit was filed, the second on October 28, 1929, to Nueces county, and the third on March 16, 1931, this one served upon appellant in Reeves county.

If these had been the only facts before the court, then its duty would have been to sustain appellant's plea of limitations.

The question next arises as to whether the things testified to by Mr. Russell as having been done by him and under his direction, fail, as a matter of law, to show that diligence on his part to secure service in the case, which an ordinarily prudent person would have used under same or similar circumstances.

That there were other things he might have done to secure service there can be no question, but he was not called upon to use the highest degree of diligence in order to toll the running of the statute.

The question of whether proper diligence has or has not been used in any particular case is quite often a hard matter to determine and no set rule for the determination of such question has ever been or can be laid down.

There was considerable conflict on certain phases of the question presented to the trial court, and evidently he chose to believe the testimony of Mr. Russell.

This was within his province and, taking such testimony as true, we have concluded that it was sufficient to raise a question of fact as to whether reasonable diligence had been exercised, and he having found such fact, this court is not at liberty to disturb the judgment based thereon.

The judgment of the trial court is accordingly affirmed.