## TURNER v. MONTGOMERY et al.
### No. 9900.

Court of Civil Appeals of Texas. Galveston.
Dec. 16, 1933.

Andrews, Streetman, Logue & Mobley and Homer E. Mabry, all of Houston, for plaintiff in error.

Baker, Botts, Andrews & Wharton, John T. McCullough, and P. R. Rowe, Jr., all of Houston, for defendant in error John F. Grant.

GRAVES, Justice.

This appeal—by way of writ of error—is by E. W. Turner, hereinafter called appellant, against John F. Grant and E. L. Montgomery, appellees, from a judgment in the aggregate sum of $1,647.83, together with interest thereon, against himself and Montgomery in favor of Grant upon a series of $50 notes executed by Montgomery and wife along with Turner to Grant, the decree having been entered partly upon a jury's findings upon special issues and partly upon additional findings of the court, the jury's findings in substance being (1) that neither Grant nor his representatives failed to use reasonable diligence to secure service of citation in the cause that was had upon Montgomery on June 11, 1931, (2) that neither Grant nor his representatives consent-

638

.ed that Turner might remove the house involved from the lot at Boling to his own land, and the court's additional findings—in so far as material now—being thus reflected in the judgment:

"And it appearing to the court from the pleadings and the undisputed evidence in the cause that the notes forming the basis of this suit were executed by the said E. L. Montgomery, his wife, Mrs. Edna Montgomery, and E. W. Turner in payment of the purchase price for materials used in the improvement of land belonging to the said E. L. Montgomery, and not constituting the separate property of the said Mrs. Edna Montgomery, and that therefore, the said Mrs. Edna Montgomery is not a necessary or proper party to this suit, and that furthermore, at all times since the commencement of this suit, the said Mrs. Edna Montgomery has been insolvent and her residence and whereabouts have been unknown to plaintiff, his representatives and attorneys, although they have used due diligence in an effort to determine such residence, and it further appearing to the court from said pleadings and evidence and said verdict that plaintiff is entitled to recover herein against the defendant E. L. Montgomery, as principal, and the defendant E. W. Turner, as surety, the full amount sued for by plaintiff:

"It is therefore, on this the 30th day of April, 1932, ordered, adjudged and decreed by the court that the plaintiff, John F. Grant, do have and recover of and from the defendants, E. L. Montgomery and E. W. Turner, the sum of Sixteen Hundred Forty Seven and 83/100 Dollars ($1,647.83), together with interest on Fourteen Hundred Ninety-eight and 03/100 Dollars ($1,498.03) of said sum from the date of this judgment at the rate of ten per cent (10%) per annum, and together with interest on the remaining One Hundred Forty Nine and 80/100 Dollars ($149.80) of said sum from the date of this judgment at the rate of six per cent (6%) per annum, and together with the costs in this suit expended by plaintiff, for all of which execution may issue.

"It is further ordered, adjudged and decreed by the court that the said defendant E. W. Turner is surety of the said defendant E. L. Montgomery on the debt forming the basis of this judgment, and the sheriff or other officer making levy under execution issued herein shall levy execution first upon the property of the said E. L. Montgomery subject to execution and situated in Harris County, Texas, before a levy shall be made upon the property of the said E. W. Turner, if so much of the property of the said E. L. Montgomery can be found as will, in the opinion of the sheriff, be sufficient to make the amount of the execution; otherwise, the levy shall be made on so much property of the said E. L. Montgomery as may be found, if any, and upon so much of the property of the

said E. W. Turner as may be necessary to make the amount of the execution; and the Clerk shall make a memorandum of this order on the execution."

As were his positions below, appellant contends on appeal, in so far as concerns substantive defenses:

(1) That he was conclusively shown to be only an indorser on the notes to the knowledge of Grant, and there was neither pleading nor evidence that the latter had ever given him as such notice either of their dishonor or nonpayment, and since no issues were either requested or submitted to the jury upon these features, they were waived in favor of the appellant and the judgment should have, in consequence, been rendered for him.

(2) To quote his own proposition: "The plaintiff in this case admitted and the Court found that appellant was not a principal obligor on said notes but, at most, was only a surety and all parties admitted that E. L. Montgomery and Mrs. Edna Montgomery were the principal obligors and that the plaintiff at the time of the execution of the notes, took a lien on a lot and house to secure the payment of such notes, and the evidence further showing that the plaintiff dismissed his suit as against Mrs. Edna Montgomery and that he did not attempt to get a judgment against her and did not attempt to get a judgment of foreclosure of his lien on said house either as against Mrs. Edna Montgomery or E. L. Montgomery so that the plaintiff was not following his primary remedy as against the principal obligors but was merely seeking to fasten primary liability on this appellant, which cannot be done, and, therefore, judgment should have been rendered in favor of this appellant."

(3) Likewise quoting from appellant's presentments, but in group:

"The plaintiff did not request the trial court to submit issues to the jury inquiring as to: (a) whether or not Mrs. Edna Montgomery was a married woman at the time of the execution of the notes, (b) whether or not the residence of Mrs. Edna Montgomery was unknown, (c) whether her residence could have been ascertained by the use of reasonable diligence, (d) whether Mrs. Edna Montgomery was actually insolvent, (e) whether Mrs. Edna Montgomery was notoriously insolvent, and (f) whether her residence was unknown to the plaintiff; and the trial court did not submit such issues but made independent findings of fact thereon in the judgment and such issues being issues of fact, the plaintiff waived his right to have such issues submitted and all such issues should have been found in favor of the defendant and the judgment rendered accordingly for this appellant, as such issues were issues which the plaintiff was required to have a jury finding on before the plaintiff was entitled to a judgment. In any event, questions of fact were raised

by the evidence as to each and all of these features, and, appellant having so requested, the court should have submitted them for findings thereon by the jury; * * * it was necessary for the plaintiff to have a fact-finding that the notes sued upon were given for the purchase-price of lumber, which was not the separate property of Mrs. Edna Montgomery, and the evidence raised a jury question with reference thereto and the trial court failed to submit an issue thereon and the plaintiff failed to request the submission of an issue thereon and by such acts the plaintiff waived such issue and such issue should have been found in favor of this appellant and a judgment rendered for appellant and the trial court was unauthorized to make findings of fact in his judgment on purely jury issues and the trial court should have found that the plaintiff had waived said issue and the issue was, therefore, found in favor of this appellant."

Among procedural objections, appear these: (1) "The pleadings and the evidence in said cause raising the issue as to whether or not the appellant was only an endorser on said notes as between said parties and with full notice thereof to the plaintiff, and the appellant having requested the submission of an issue to determine such facts, the court should have given such requested issues"; (2) "there being pleadings and evidence to support it, the court should have given appellant's requested special issue No. 1, reading:

" 'Was it understood between the parties at the time of the execution of these notes that the defendant, E. W. Turner, was only an endorser?' "

After careful consideration of the record, it is determined that none of these contentions should be sustained; without extending the discussion to the length the record invites, this decision may—in the main—be rested upon these considerations:

(1) It appearing from the face and express terms of the notes that appellant was in any event primarily liable thereon, either as a principal or surety (he having signed on the face thereof, along with the makers thereof), and there being no issue raised as to any fraud, accident, or mistake as to the execution or delivery of them, parol testimony was not only inadmissible to support the claim of his being only an indorser, but there was no competent evidence otherwise tending to indicate any such limitation of his liability; wherefore, there was no such issue properly in the case, hence the trial court's action in so holding and refusing the tendered inquiry thereon was correct. 21 R. C. L. 952; 50 Corpus Juris 70, 71; 6 Texas Jurisprudence, 733; Pingrey on Suretyship and Guaranty (2d Ed.) p. 7; Barringer v. Wilson, 97 Tex. 583, 80 S. W. 994; Burke v. Jacobson (R. I.) 165 A. 363; Cook v. Brown, 62 Mich. 473, 29 N. W. 46, 4 Am. St. Rep. 870; Aultman &

Taylor Co. v. Gorham, 87 Mich. 233, 49 N. W. 486, 487; Lumbermen's National Bank v. Campbell, 61 Or. 123, 121 P. 427; Farmers' & Mechanics' National Bank v. Head (Texas Com. App.) 7 S.W.(2d) 61, 63; Georges v. Fricke (Tex. Civ. App.) 283 S. W. 221, 223—writ of error refused by Supreme Court; Scott v. Tate (Tex. Civ. App.) 28 S.W.(2d) 848; Cook v. Southwick, 9 Tex. 615, 60 Am. Dec. 181.

Furthermore, appellant did have actual notice of dishonor and nonpayment of the notes, he himself having testified he received such notice from appellee at least as early as May or June, 1926, and at all times thereafter had actual knowledge of such dishonor and nonpayment, both from the appellee and from E. L. Montgomery. He also, quoting now from this unchallenged statement in appellees' brief: "Knew of the non-payment of the notes in December, 1926, and went to appellee's representative Kiser and negotiated with him for permission to move the house off the lot securing the notes, and, in connection therewith, held out to Kiser as an inducement therefor that appellee would continue to hold the same lien over the house he already had. This was appellant's own testimony. And when asked on cross-examination if he did not, at the time he negotiated with Kiser for the house, consider he owed the debt, appellant testified:

" 'Not the whole debt, if the house was going to destruction over there like it was, when it was no good whatever, the value of the house; probably owed it, but not the whole debt, because that was Montgomery's debt, and he would be the one that paid it.' "

(2) A sufficient answer, without the citation of supporting authorities, to the insistence that appellee's failure to seek or obtain a judgment against Mrs. Montgomery interdicted the rendition of one against himself, lies in the undisputed facts developed upon the trial, to this general effect: Mr. and Mrs. Montgomery were husband and wife at the time they executed these notes together, the record being devoid of any testimony of any probative force to the contrary; there was no pleading nor proof that the house involved —for the materials in constructing which the notes were given—was the separate property of Mrs. Montgomery, or constructed on land constituting her separate estate, nor was there any showing whatever that the notes had been given for necessaries for herself or her family, nor for the benefit of her separate estate; indeed, it was likewise established not only that Mrs. Montgomery had no property at all, but also that she was at all material times actually and notoriously insolvent, and that her whereabouts was actually unknown—even to her husband and to the appellant himself.

The evidence, at all events—whatever the pleadings may have contained—never at any

stage having raised for the jury an issue with reference to appellant's defenses over any of these features as affected Mrs. Montgomery, it follows that she was neither liable on the notes nor a necessary party to the action, hence the appellee's dismissal as to her and the court's complained of action consequent thereupon was not in prejudice of any right of his.

If, however, it be more appropriate to cite authorities, these are noted: 23 Texas Jurisprudence, §§ 169, 195, 294, and 295; Gamel v. City National Bank (Tex. Com. App.) 258 S. W. 1043; Boggs v. Farmers' Fund of Texas (Tex. Civ. App.) 37 S.W.(2d) 205; Speer's Law of Marital Rights in Texas (1929) § 191; Tygart v. Hulshizer (Tex. Civ. App.) 234 S. W. 1116, 1117; Lee v. Yandell, 69 Tex. 34, 6 S. W. 665; Speer's Law of Special Issues in Texas, §§ 162, 163; Golden v. First State Bank (Tex. Civ. App.) 38 S.W.(2d) 628.

■ In this connection, the opening recitation in appellant's first quoted proposition, supra, to the effect that he was admittedly "at most only a surety," is evidently an inadvertent error, since in that particular appellee's opposing position was that, while he could not in the circumstances so show himself to be a mere indorser, he could at most present parol evidence tending to indicate that he was an accommodation maker; but, even were it conceded that the proof by parol actually showed him to be only such accommodation maker, he was nevertheless in law a surety, and therefore still primarily liable, under such cases as those of Fricke and Tate, supra.

■ (3) The jury having properly found on sufficient evidence that the house was removed from the land in question by the appellant himself without the appellee's consent, and it further appearing from his own testimony that he "got the house" and still retains it—whether or not a foreclosure of the lien upon it was ever effected—he cannot now claim a discharge from liability by reason of any such asserted failure to foreclose, since under the finding and testimony referred to, not only was such failure to foreclose, if any, the result of his own wrongful act, but further he shows he was not injured thereby, for the two-pronged reason that he still had the house itself and that it was in his hands, to quote his own testimony on the point: "No good whatever." Corpus Juris, vols. 41 and 50, pp. 506 and 164, respectively.

■ (4) The trial court properly allowed 10 per cent. of the principal and interest due at the time the judgment was rendered for attorney's fees, rather than 10 per cent. up to the time the notes were placed in the hands of attorneys on April 1, 1928, as appellant urges should have been done; the notes all contained this provision, the italics having been added here:

"And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or if collected by suit or in the Probate Court, then an additional amount of *ten per cent on the principal and interest of this* note shall be added as collection fee."

These authorities support the allowance made in the circumstances: Poulter v. Smith (Tex. Civ. App.) 149 S. W. 279; Amuny v. Seaboard Bank & Trust Co. (Tex. Com. App.) 23 S.W.(2d) 287; Slack v. Elkins, 10 Ga. App. 571, 73 S. E. 862.

■■ (5) The final argument for the discharge of appellant from liability by reason of appellee's alleged negligence in securing service of citation upon E. L. Montgomery is untenable in the state of the record, it is thought, for these among other reasons: The legal presumptions were all in favor of the validity of the citation involved, the record being wholly devoid of any evidence that the sheriff or any one else wrongfully altered it, and it not being shown that the appellee was in fact guilty of any negligence in the matter of securing service thereon; Montgomery not only did appear and answer before judgment, but never himself attacked the sufficiency of the citation or service, and judgment was rendered against Montgomery both in favor of the appellee and also—in the terms prescribed by statute where a suretyship relationship existed—in favor of appellant himself; Montgomery did not appeal, wherefore the judgment against him has become final, and appellant, not having pleaded in his own behalf the statute of limitation affecting the matter, would seem to still have every right inuring to him that he would have been entitled to under any circumstances. Meyer v. Pecos Mercantile Co. (Tex. Civ. App.). 47 S.W.(2d) 435; Charbonneau v. Bouvet, 98 Tex. 167, 82 S. W. 460; Daniel v. Harvin, 10 Tex. Civ. App. 439, 31 S. W. 421; Western Casket Co. v. Estrada (Tex. Civ. App.) 116 S. W. 113.

An affirmance has accordingly been entered.

**Affirmed.**