**CITY OF FORT WORTH et al., Appellants,**

v.

**FORT WORTH RADIATOR MANUFAC-
TURING COMPANY, Appellee.**

No. 15607.

Court of Civil Appeals of Texas.

Fort Worth.

April 1, 1955.

Rehearing Denied April 29, 1955.

R. E. Rouer, June R. Welch and John Gano, Fort Worth, for appellant.

Hill & Paddock, Burton B. Paddock and John G. Street, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice:

Suit for delinquent taxes by the City of Fort Worth. Judgment for the defendant property owner. City appeals.

Affirmed.

Upon the appeal we initially have the question of the City's right to a judgment against the defendant for taxes for 1947–48–49. In so far as these taxes are involved in the case, a statute of limitations is a very important factor on the appeal. In the suit for taxes assessed against the defendant for the year of 1951, the limitations question is of no concern.

We consider first the limitations question. Effective ninety days after May 27th,

1953, date of adjournment of the 53rd Legislature, Article 7298, T. R. C. S., as amended by said legislative body, Vernon's Ann.Civ.St. art. 7298, gave defendant the defense of four-year limitation in suits for delinquent personal property taxes. The statute, as amended, provides that "no su't shall be brought for the collection of delinquent personal property taxes of any taxing authority unless instituted within four (4) years from the time the same shall become delinquent.".

As result of the amendment of said statute, the instant suit was included among those tax suits filed by the City of Fort Worth on date of August 25th, 1953. Suit was for the collection of delinquent personal property taxes. There is no question but what the taxes sought by said suit for the years 1947–48–49 would have been subject to the defense of limitations had the suit not been filed on or before date of August 26th, 1953. It was filed within such time. The limitation question in the case is not raised because of the late filing of the suit, but because of circumstances attendant to the issuance and service of citation pursuant thereto.

The first words of the plaintiff's original petition read as follows: "To the Honorable Judge of Said Court: Now come the City of Fort Worth, Texas, a municipal corporation, and the Fort Worth Independent School District, a corporation, hereinafter styled plaintiffs, complaining of Fort Worth Radiator Manufacturing Company, a corporation, with officers and agents upon whom service of citation may be had herein located in Fort Worth, Tarrant County, Texas (serve Herman Schaar, its President, at 2629 Highview Terrace); and complaining of * * *."

The records of the District Clerk of Tarrant County, Texas, indicate that a citation was issued on August 28th, 1953, but said records do not reflect to whom it was delivered, if in fact it was delivered to an officer authorized to serve it upon the defendant, nor does it appear from the said records that the citation was ever returned by any person. Neither does any

fact bearing upon what, if anything, transpired relative to this citation appear in the statement of facts. The record does show that on November 24th, 1953, approximately three days prior to the date citations issued August 28th, 1953 (but not served) would have become "functus officio" and inoperative as an instrument of process, the record of the suit in the office of the District Clerk was checked by an attorney for the City. The attorney ascertained therefrom that presumably the citation had been issued and delivered to a proper officer for its execution, but that no return thereof had been made. The normal assumption of an attorney examining the records at such a time and making such findings would be that service of process had not been effected for some reason or other, and this was the assumption made by the City's attorney who checked the records. He made a further assumption, to-wit: that the reason and occasion for service of process not having been made was because of the fact that there was some error in the address of the defendant upon whom process was desired. In this the attorney was in error, for the Herman Schaar designated by the City's legal department as the person upon whom service of citation should be sought was at all times a resident of the City of Fort Worth, at 2629 Highview Terrace, and was there present and available.

Having made the foregoing assumptions the City's attorney caused the file relative to the matter to be placed among others accumulated because of difficulties attendant to service of citation. Additional investigation was necessary in most of the cases represented by these files in order that there might be a determination of proper means for service and proper persons upon whom to make service. By date of March 16th, 1954, such investigation, as applied to this case, revealed that the proper person for service of process was Herman Schaar, and the proper location of Mr. Schaar was at 2629 Highview Terrace in the City of Fort Worth. On said date the City wrote to the District Clerk requesting that a new

citation be issued. This was done on March 19th, 1954, and process was promptly had upon the defendant by serving Mr. Schaar.

The evidence showed that the delayed service was not the result of any intention or desire on the part of the City that there be a delay. Rather does it appear that it was the desire of the City that the defendant be promptly served by a proper officer with a citation promptly issued from the office of the District Clerk. That the citation promptly issued from the office of the Clerk, the City's attorney was justified in believing when he checked the records indicating that such was the case on November 24th, 1953. At such time, he could not know that there would not be an execution of such citation by a proper officer through a delivery to Mr. Schaar. He was on notice, however, that in approximately three days' time it would be pointless to do so if not theretofore accomplished, since the citation would then become "functus officio." Despite this, he did not make certain after the expiration of such time that service of the first citation actually had not been effected, nor promptly request a reissuance of a newly dated citation. He elected to abandon recourse to the machinery afforded by reissuance in order to conduct an investigation of his own. This investigation he delayed or permitted to be delayed some three months, taking its turn along with other investigations of like character.

 This circumstance, the delayed request for issuance of the second citation, had an effect upon the general rule that the filing of the petition halts the running of statutes of limitations. The effect had was that of creating an issue of fact upon the question of whether or not the City was responsible for delaying the issuance and service of that citation, which, in this instance, was actually the process bringing the defendant into court and placing it under its jurisdiction.

The fact issue was: "Did the City fail to exercise that degree of diligence which an ordinarily prudent person would have used under the same or similar circumstances in seeking to obtain issuance and service of citation pursuant to the prosecution of the suit which it filed?" If the City did so fail, then the statute of limitations was not tolled by the filing of the suit, but if it did not so fail, then the pleading of the statute by the defendant availed nothing and the date on which the suit was filed would be the controlling date. The trial court resolved this issue against the City.

In arriving at the conclusion that the situation existent in this case was one wherein there was an issue of fact, we found guidance in the following cases: McDonald v. Evans, Tex.Civ.App. Amarillo, 1949, 217 S.W.2d 870; Long-Bell Lumber Co. v. Bynum, Tex.Com.App. 1942, 138 Tex. 267, 158 S.W.2d 290; City of Gainesville v. Harder, 1942, 139 Tex. 155, 162 S.W.2d 93; Meyer v. Pecos Mercantile Co., Tex.Civ.App. El Paso, 1932, 47 S.W.2d 435; Austin v. Proctor, Tex. Civ.App. El Paso, 1927, 291 S.W. 702; Curtis v. Speck, Tex.Civ.App. Galveston, 1939, 130 S.W.2d 348, error refused; 26 Tex.Dig., Limitation of Actions, 28 Tex.Jur., pp. 192–198, secs. 99–103.

The City complains of the trial court's action and contends that in view of the fact that the individual attorney employed by it for the purpose of handling the tax litigation was overloaded with work at the times in question, there was no delay which should have been charged against it. This attorney had been employed by the City on the day suit in this case was filed, or at least within a day or two prior to this date. By reason of such employment he was the "inheritor" of 450 personal property tax suits, including the instant suit, plus 2,000 suits on real estate taxes already filed prior to time of his employment. By diligent work and effort he was able to timely file an additional 267 suits which otherwise would have been barred by the statute of limitation on January 1, 1954. Testimony as to the fact of the "work overload" in such respects necessitated by the legislative enactment

of the limitation provision in the amendment to Article 7298, coupled with the facts previously recited, substantially covers all the testimony material of consideration on the question of limitations as applied to the City's suit for the 1947–48–49 taxes.

While this, and the other evidence introduced, was sufficient in our opinion to have supported a finding that the City did in fact exercise proper diligence under the circumstances, certainly under the state of the record such a finding was not required. While the work-load incumbent upon the City's legal department was unseasonably increased because of the amendment to Article 7298, we are not informed in the record that the City did not have sufficient personnel available to attend the job, or that there was any reason why no more attorneys and other employes were hired to attend the work than was actually the case. Perhaps, by some manner of proof it might have been possible for the City to display such diligence that we would be required to hold as a matter of law that proper diligence was actually exercised. But that was not true in this instance. It is apparent from the record that the legal department of the City of Fort Worth is not one lawyer, but contrarily several, and its organization is somewhat analogous to that of sizeable law firms engaged in the practice of law in the metropolitan centers. In such cases, something more than the diligence of one member of such a firm is always required to be proven, in demonstrating a client's proper diligence in connection with matters analogous to the one under consideration. The requirement to be made of the City would be identical to that of a client of a multi-member law firm.

The assignment is overruled.

Regarding the City's suit for 1951 taxes, there is no limitation question. The defendant attacked the valuation of the property, taxes upon which was the subject of the suit, claiming that the City's assessed valuation of the property at $5,000.00 was several times $840.34, the proper valuation

for assessment, and therefore void, and the taxes based thereupon sought by the suit likewise void. Though the form of the defense advanced appears to be by direct attack, we believe the attack should be here properly considered as collateral.

The trial court held that the assessment upon which the City's recovery was sought was void, and judgment was entered in favor of the defendant, with the provision that such judgment was without prejudice to the right of the City to reassess the personal property owned by the defendant on January 1, 1951, as provided by law. Such a procedure is either abandoned or delayed pursuant to the appeal taken to this court.

The City insists that its valuation and assessment of the defendant's property for tax purposes (for 1951) was proper, valid and legal. Alternatively, the City contends that the defendant had lost any right to protest or contest the valuation and assessment because of his failure to resort to the remedies provided by the Fort Worth City Charter. Further, alternatively, the City contends that the defendant failed to show that he has been substantially injured through the valuation and assessment made by the City.

We have noted with interest the case of Stone v. City of Dallas, Tex.Civ.App. Waco, 1951, 244 S.W.2d 937, writ dismissed, cited by the City. The provisions of the Dallas City Charter quoted in that opinion are substantially identical to provisions found in the Fort Worth City Charter. Fort Worth is a home rule city, and—relative to the matter of legality of assessments by the City in the instant case —the same thing declared to be the law applicable in the Stone case could be repeated here.

■ The rule relative to such matters is that the decision of taxing boards in the matter of valuations are quasi-judicial in their nature, and in the absence of fraud or other obvious violations of the law, such decisions are not subject to collateral attack. As applied by the court in the

Stone v. City of Dallas case, the suit for taxes was treated as the subject of controversy, and the defense asserted in so far as it claimed that the defendant's property had been excessively evaluated was treated as a collateral attack. The Waco Court of Civil Appeals held that the defendant was bound to comply with the requirements of the Dallas City Charter provisions relative to contest of the propriety of the assessments made against him, as to the manner through which the amount of the assessment was arrived, as well as to the regularity in the establishment of the assessed valuation of his property.

■ The Waco Court did not hold that the defendant was "at the mercy of the tax collector" if he did not make complaint as provided by charter provisions in the case of contest of valuations, assessments, and taxes, using the machinery afforded thereby to obtain revision if he could, with resort to the machinery of the courts if unsatisfied,—but it did hold that where he had not done so he must show that a fraud had been perpetrated upon him which operated injuriously toward him, or that there had been an obvious violation of the law involved in the assessment or taxation sought to be imposed upon him or his property. In other words, it appears that the Waco Court held that validity should be accredited to every act of the municipality in any valuation or assessment until the presumption in that regard is overcome by a showing on the part of the defendant that circumstances actually existed which rendered void that which seemed valid. This we believe to be the law.

In the case of State v. Whittenburg, Tex., 1954, 265 S.W.2d 569, the court said that in a suit for taxes the plaintiff makes out a prima facie case of the validity of the assessed valuations by introduction in evidence of the official records, whereupon the burden rests upon the defendant to go forward with proof which would meet the requirements of law for avoiding the valuation. We construe this to mean that if a defendant expects to prevail upon the theory that the tax sought to be imposed is void, it is incumbent upon him to prove that fact, or prove facts subject to no other construction. The opinion states that in suits for taxes no attack on valuations fixed by boards of equalization can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation,—and that in cases of such attack it is to be presumed that the boards' actions were performed in good faith and in accordance with law.

The Supreme Court, in State v. Whittenburg, goes on to discuss certain facts and circumstances which have been held to establish such fraud or illegality as to render valuations void, citing cases. It is stated that a grossly excessive valuation may, in law, be sufficient to establish such. However, it is further stated that mere errors in judgment on the part of a board, or the fact that a trial judge or jury differs with the valuation fixed by the board will not suffice as a basis for avoiding the board's action. In the opinion it was then stated that in order for Whittenburg to prevail in his contention that the State had unlawfully discriminated against him in the evaluation of his property for tax purposes, it was incumbent upon him to make a reasonable showing that the evaluation of his property was grossly excessive in comparison with other property similarly situated to his own.

■ In the present instance we are of the opinion that in order for the defendant to prevail in his contention that the City has fraudulently evaluated or assessed his property or illegally evaluated or assessed it, etc., it was incumbent upon him to make a reasonable showing that the evaluation of his personal property was grossly excessive in comparison with a proper evaluation. This, we believe, the defendant did show.

The taxable value of $5,000 was the basis used by the City in assessing personal property taxes against the defendant for 1951. Under the evidence the trial court, as the finder of fact in the case, was jus-

tified in concluding that a taxable value of considerably less than the figure of $1,000 was the valuation which should have been used by the City in making the assessment upon which it based its suit.

■ We believe that this evaluation for tax assessment was so grossly excessive as to render it void under the authorities cited in State v. Whittenburg, supra. What is "excessive" is necessarily relative, and the same thing is true in the determination of whether the size or amount of a thing in comparison with another, or others, is "grossly excessive". If a man owe another $1, but such other demands $5 in satisfaction of the debt, the demand is "grossly excessive", though if the debt were $100 and the demand $105, the demand would merely be "excessive". Actually, the question is one of proportion, and here the valuation was excessively disproportionate or "grossly disproportionate", and, as such, it was void, and the defendant is entitled to prevail in his defense since substantial injury is thereby apparent.

Judgment is affirmed.